# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHCC COMPANY LLC,**

        **Plaintiff,**

**v.**                                          **Case No: 6:16-cv-1954-Orl-22DCI**

**PILGRIM PIPELINE HOLDINGS, LLC,**

        **Defendant.**

# REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**    **PLAINTIFF'S VERIFIED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT (Doc. 9)**
>
> **FILED:**     **January 4, 2017**
>
> **THEREON** it is **ORDERED** that the motion is **DENIED without prejudice**.

## I.   PROCEDURAL BACKGROUND.

On November 7, 2016, Plaintiff filed a two-count Complaint against Defendant. Doc. 1. In Count I, Plaintiff sought declaratory and equitable relief under both federal and Florida law over a purported controversy regarding if and when Plaintiff is entitled to a finder's fee pursuant to the Confidentiality, Non-Disclosure, Non-Circumvent and Settlement Agreement (the Settlement Agreement). *Id*. at 10-12. In Count II, Plaintiff sought damages for Defendant's purported breach of the Settlement Agreement. *Id*.

On November 28, 2016, Plaintiff filed an affidavit of service indicating that Plaintiff served Defendant on November 14, 2016 via Defendant's registered agent, Anthony Pannella, Jr., Esq. Doc. 6. To date, Defendant has not appeared in this case.

On December 6, 2016, Plaintiff filed a motion for entry of clerk's default against Defendant. Doc. 7. The following day, the Deputy Clerk entered default against Defendant. Doc. 8. Plaintiff filed a motion for default judgment (the Motion) on January 4, 2017. Doc. 9.

On January 19, 2017, the Court entered an Order requiring Plaintiff to file a notice regarding subject matter jurisdiction. Doc. 10. Specifically, the Court required Plaintiff to file a notice naming every one of Defendant's members, and stating each member's state of citizenship. *Id*. Plaintiff complied with the Court's Order on February 4, 2017. Doc. 13.

## II. ALLEGATIONS.

The allegations in Plaintiff's Complaint are as follows. Defendant is involved in a project to plan, develop, construct, and operate a new petroleum pipeline to transport refined petroleum products to various terminals located on the east coast (the Project). Doc. 1 at 3. On March 8, 2012, Nash Inc. (Nash), through Bryan C. Greiner,[1] executed and delivered a Fee and Consulting Agreement (the Nash Agreement) to Plaintiff to provide financial networking and consultancy services for the Project. *Id*. As part of the Nash Agreement, Plaintiff introduced Nash to Natixis,

---

[1] Plaintiff alleges that at all times relevant, Mr. Greiner was an officer of Defendant. Doc. 1 at 3. Mr. Greiner's attorney, George Bochis, was also an officer of Defendant. *Id*. Both Mr. Greiner and Mr. Bochis conducted all transactions and dealings with Plaintiff on behalf of or for the benefit of Defendant. *Id*. Defendant knew of, benefitted from, and accepted and ratified these transactions and dealings. *Id*. However, Plaintiff did not allege that Defendant was a party to the Nash Agreement. *See infra* note 2.

Inc. (Natixis), a financial resource provider. *Id.* at 4. As a result of Plaintiff's efforts, Natixis agreed to obtain equity and debt financing for the Project.[2] *Id.* at 5.

On March 22, 2012, Natixis executed a Mandate Letter with Defendant confirming that Natixis was retained by Defendant as the sole arranger to raise equity and debt for the Project, which was estimated to cost approximately $770,000,000.00. *Id.* at 6; Docs. 9-1; 9-2. The Mandate Letter provided, in part, as follows:

> The Company[3] respects and warrants that there are no brokers, representatives or other persons who, by or through the Company, have an interest in compensation in connection with the transactions contemplated by this Mandate Letter, except that [Plaintiff] does have an interest in compensation for an Equity and/or Debt introductory/finder's fee of One Percent [1%] calculated on the gross amount of Equity and/or Debt committed by any Equity and/or Debt provider(s) (as set forth in the herein below described transaction) and payable as the Equity and/or Debt Facility Closing Date(s) as they shall occur.

Docs. 1 at 6; 9-1 at 2. Plaintiff was not a party to the Mandate Letter. *See* Docs. 9-1; 9-2.

Natixis successfully obtained an investor that agreed to accept the Mandate Letter. Doc. 1 at 6. Natixis then agreed to provide debt. *Id.* On May 13, 2013, the Project closed with EIF Pilgrim, LLC (EIF) as lender, and Defendant paid Plaintiff for the funding it had received as of that date. *Id.* Plaintiff alleged that EIF would continue to fund future draws for Defendant. *Id.*

---

[2] Plaintiff provided additional details regarding Nash and the Nash Agreement. Doc. 1 at 3-5. But it is not clear to the undersigned how these additional details are relevant to this action. Nash is not a party to this action. Nor does Plaintiff suggest that the terms of the Nash Agreement are somehow binding upon Defendant or that the terms somehow alter the agreement upon which Plaintiff has based this action. In fact, in the Motion, Plaintiff appears to concede that the Nash Agreement has no bearing on this action. Doc. 9 at 3 ("Plaintiff brings no claims on the Nash Agreement in this case, which is introduced to demonstrate the course of dealing resulting in the 2013 Agreement, at issue in this case . . . ."). Accordingly, the undersigned declines to discuss the Nash Agreement further.

[3] The Company is defined as Defendant and its subsidiaries, affiliates, parents, and successors. Doc. 9-1 at 1.

And on May 22, 2013, EIF executed a Letter Agreement with Defendant confirming the funding terms. *Id*. at 7.

On May 23, 2013, Defendant formally retained Plaintiff under a Contractor Services Agreement, with compensation referencing the terms of the Mandate Letter.[4] *Id*. On July 24, 2013, Plaintiff and Defendant signed a Master Services Agreement for services on the Project. *Id*.

On December 31, 2013, Defendant executed and delivered the Settlement Agreement, which is the agreement that is at issue in this action. *Id*. at 8. In the Settlement Agreement, Defendant confirmed that Plaintiff had earned $76,175.00 in fees and anticipated additional payments of approximately $7,700,000.00. *Id*.; *see also* Doc. 9-4 at 1. Defendant also affirmed commissions it owed to Plaintiff, expressly referencing the portion of the Mandate Letter concerning Plaintiff's finder's fee. Docs. 1 at 8; 9-1 at 2; 9-4 at 1. Plaintiff alleged that per the Settlement Agreement, Defendant is liable to Plaintiff for a finder's fee of 1% on the gross amount of equity and/or debt committed to Defendant by any entities or persons that were introduced directly or indirectly by Plaintiff if Defendant has since received equity and/or debt in excess of $17,291,960.00.[5] Doc. 1 at 10.

On April 24, 2015, Defendant paid Plaintiff $172,919.60 as compensation for the finder's fee of 1% on the gross amount of equity and/or debt provided to Defendant.[6] *Id*. Plaintiff then generally alleged that, "[u]pon information, Defendant has received equity and/or debt in excess

---

[4] The Contractor Services Agreement also contained a monthly retainer of $10,000.00 and a completion payment of $125,000.00. Doc. 1 at 7.

[5] Neither the Settlement Agreement nor the Mandate Letter contain a term requiring the equity and/or debt received to be in excess of $17,291,960.00. Plaintiff did not explain where it believes this term came from or why it believes this term applies to the Settlement Agreement.

[6] The Court notes that $172,919.60 is equal to 1% of $17,291,960.00.

- 4 -

of $17,291,960.00, entitling Plaintiff to the finder's fee." *Id*. "Despite Plaintiff's repeated demands, Defendant will not disclose if it received additional equity and/or debt in excess of the above threshold by entities/persons introduced by Plaintiff . . . ." *Id*. at 11.

With regard to Count I, Plaintiff claimed that there is a "controversy if and/or when Plaintiff is entitled to the finder's fee in excess of $76,000.00, per the [Settlement] Agreement, *requiring determination of Defendant's receipt of debt and/or equity exceeding $17,291,960.00* by entities/persons introduced by Plaintiff, per its terms." *Id*. (emphasis added). Plaintiff asked the Court to enter a judgment "declaring, establishing and determining Defendant's obligation to pay the finder's fee to Plaintiff per the [Settlement] Agreement." Doc. 1 at 12.

With regard to Count II, Plaintiff argued that "*[i]f* Defendant received equity and/or debt in excess of the $17,291,960.00 threshold by entities/persons introduced by Plaintiff, *then* Defendant breached the [Settlement] Agreement and is liable to Plaintiff for the finder's fee, plus costs and fees." *Id*. at 11 (emphasis added). Plaintiff asked the Court to enter a judgment against Defendant for Plaintiff's finder's fee. *Id*. at 12.

The Settlement Agreement is governed by Florida law and provides exclusive jurisdiction by an appropriate federal district court as to all legal proceedings arising from the Settlement Agreement. Docs. 1 at 9; 9-4 at 3. Nearly all meetings on the Project involving Plaintiff and Defendant occurred in Florida. Doc. 1 at 9. And Defendant was to pay Plaintiff by check or other payment deposited in Plaintiff's Florida bank account. *Id*.

### III. <u>STANDARD OF REVIEW</u>.

Before entering default judgment, a court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *Nishimatsu Constr. Co. v.*

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[7] To this end, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, the plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

## IV. DISCUSSION.

### A. Subject Matter Jurisdiction.

Plaintiff alleged that the Court has diversity jurisdiction over this matter because the parties are completely diverse and the amount-in-controversy exceeds $75,000.00. Doc. 1 at 1-2. However, upon review, the undersigned finds that Plaintiff failed to adequately plead or otherwise demonstrate complete diversity. *See generally Moreno v. Breiburn Fla., LLC*, No. 2:09-cv-566-FtM-29DNF, 2011 WL 2293124, at *1 (M.D. Fla. June 9, 2011) ("In an action filed directly in federal court, plaintiff bears the burden of adequately pleading, and ultimately proving, jurisdiction.") (citation omitted). Although Plaintiff pled that Defendant was a limited liability company whose sole member was EIF, another limited liability company, Plaintiff failed to specifically identify each member of EIF and their states of citizenship. *See, e.g.*, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (stating that limited liability companies are citizens of every state in which their members are citizens). In response to the Court's Order to Show Cause, Plaintiff attempted to rectify this deficiency by filing

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

a Notice with the Court that specifically listed all of the necessary members and their states of citizenship. Doc. 13. But Plaintiff's Notice was not sworn to, and is therefore insufficient to establish the existence of subject matter jurisdiction. *See, e.g.*, *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269-70 (11th Cir. 2011) ("[W]e consistently have required some evidence to assure us jurisdiction exists before we will ignore defective jurisdictional allegations that the plaintiff does not amend.") (citation omitted).

**B. Personal Jurisdiction.**

The Court has personal jurisdiction over Defendant because Plaintiff alleged that nearly all meetings on the Project between Plaintiff and Defendant occurred in Florida and that Plaintiff's payments were to be deposited in Plaintiff's Florida bank account. Docs. 1 at 9; 9-4 at 4. Further, the Settlement Agreement includes a choice of law provision in which Defendant submitted itself to the jurisdiction of an appropriate United States District Court in the state of Florida. Docs. 1 at 9; 9-4 at 3.

**C. Count I**

In Count I, Plaintiff attempted to allege a cause of action for declaratory and equitable relief under both federal and Florida law. Doc. 1 at 11; *see also* 28 U.S.C. § 2201; Fla. Stat. § 86.011. Regardless of whether the Court applies federal or Florida law, to be entitled to a declaratory judgment, Plaintiff must establish that there is a justiciable controversy under the Constitution, which in this case requires there to be an "actual controversy" within the meaning of the federal Declaratory Judgment Act. *See Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, No. 3:13-cv-457-J-34PDB, 2014 WL 4626597, at *2-3 (M.D. Fla. Sept. 16, 2014) (stating that questions of justiciability are governed by federal law, and finding that cases interpreting the Declaratory Judgment Act's "actual controversy" requirement are instructive in determining whether a

declaratory judgment action presents a "case or controversy" within the Court's judicial power to decide because the standard for an "actual controversy" under the Declaratory Judgment Act is the same as the standard for a "case or controversy" under the Constitution) (citations omitted); *see also Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981) ("The statutory standard for determining whether an 'actual controversy' exists within the meaning of the Declaratory Judgment Act is the same as that under the 'case or controversy' requirement of the Constitution.") (citations omitted).

When determining whether Plaintiff has established an actual controversy, "the question . . . is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Diamond State Ins.*, 2014 WL 4626597, at *4. Although the "fact that the controversy rests on a contingency does not necessarily defeat jurisdiction of a declaratory judgment action . . . , the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." *Id.* (quoting *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567-69 (11th Cir. 1995)) (internal quotations omitted); *but see Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. . . . There must be a substantial likelihood that the plaintiff will suffer future injury: a "perhaps" or "maybe" chance is not enough").

Moreover, to be entitled to a declaratory judgment, both federal and Florida law require Plaintiff to establish the existence of facts demonstrating the need for a declaratory judgment. *See, e.g.*, *Malowney*, 193 F.3d at 1347 (stating that under federal law, there must be a substantial

continuing controversy between the adverse parties, the plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred, and the continuing controversy must be real and immediate, and create a definite threat and substantial likelihood that plaintiff will suffer future injury); *Santa Rosa Cty. V. Admin. Comm'n, Div. of Admin Hearings*, 661 So. 2d 1190, 1192-93 (Fla. 1995) ("[A]bsent a bona fide need for a declaration based on present, ascertainable facts, the circuit court lacks jurisdiction to render declaratory relief.") (citation omitted). Neither federal nor Florida law permit the Court to enter a declaratory judgment based upon speculation and the mere possibility of legal injury. *See, e.g.*, *Malowney*, 193 F.3d at 1347 ("There must be a substantial likelihood that the plaintiff will suffer future injury: a "perhaps" or "maybe" chance is not enough") (citations omitted); *Santa Rosa Cty.*, 661 So. 2d at 1193 ("Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the *possibility* of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, and rest in the future.") (citations and quotations omitted) (emphasis in original).

Here, Plaintiff has not sufficiently pled facts establishing a justiciable controversy or the need for a declaratory judgment. Plaintiff based Count I on the Settlement Agreement, and argued that Defendant owes it a 1% finder's fee on the gross amount of equity or debt that Defendant has received in excess of $17,291,960.00. But there are no well-pled facts to establish that Defendant has received equity or debt in excess of $17,291,960.00. Nor are there any well-pled facts to establish what entity or person, if any, provided Defendant with equity or debt in excess of $17,291,960.00. Plaintiff merely alleged in the Complaint, in a general fashion, that "[u]pon information, Defendant has received equity and/or debt in excess of $17,291,960.00, entitling Plaintiff to the finder's fee." Doc. 1 at 10. This type of general pleading is not a "well-pled fact"

that is deemed admitted on default, as Plaintiff has not proffered the information or facts upon which it relied in making this conclusory allegation.[8] *See Phazzer Elecs., Inc. v. Protective Sols., Inc.*, No. 6:15-cv-348-Orl-31DAB, 2015 WL 7184561, at *4 (M.D. Fla. Oct. 27, 2015) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.") (citation and internal quotations omitted) (*report and recommendation adopted by* 2015 WL 7076847 (M.D. Fla. Nov. 13, 2015); *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 667-68 (M.D. Fla. 2015) (finding that vague allegations pled "upon information and belief" were not deemed admitted by virtue of default) (*report and recommendation adopted*). And assuming Plaintiff's allegation could be deemed a well-pled fact, Plaintiff still failed to allege what entity or person provided Defendant with equity or debt in excess of $17,291,960.00. As such, even if the Court assumes that the Settlement Agreement's terms are what Plaintiff claims they are,[9] there are no well-pled facts to establish that Defendant has breached

---

[8] The undersigned further notes that the rest of Plaintiff's Complaint suggests that Plaintiff does not know whether Defendant has received more than $17,291,960.00 in equity and/or debt. Specifically, Plaintiff stated as follows in the Complaint: (1) "Defendant will not disclose if it received additional equity and/or debt in excess of [$17,291,960.00];" (2) the alleged controversy requires "determination of Defendant's receipt of debt and/or equity exceeding $17,291,960.00;" and (3) "If Defendant received equity and/or debt in excess of the $17,291,960.00 threshold . . . , then Defendant breached the [Settlement] Agreement." Doc. 1 at 11.

[9] The undersigned is not convinced that the Settlement Agreement's terms are what Plaintiff claims they are given that neither the Settlement Agreement nor the Mandate letter contain a term requiring the equity and/or debt received to be in excess of $17,291,960.00. This suggests that Plaintiff is applying terms from some other agreement to the Settlement Agreement. Moreover, the undersigned is not entirely convinced that Plaintiff adequately pled that the Settlement Agreement adopted and made enforceable all of the terms of the Mandate Letter by pleading that the Settlement Agreement "expressly referenc[ed] the portion of the Mandate Letter as to Plaintiff's finder's fee, which Defendant again ratified." Doc. 1 at 8. Should the Court adopt the undersigned's recommendation, Plaintiff is advised to address these issues should it file an amended complaint and second motion for default judgment.

the Settlement Agreement, or that Defendant is likely to breach the Settlement Agreement in the future.[10]

Thus, Plaintiff has failed to establish a real and immediate threat of injury. Plaintiff's allegations are speculative and do nothing but raise the possibility of injury based upon a hypothetical state of facts. And to the extent Plaintiff's allegations rest upon contingencies – that Defendant has received equity or debt in excess of $17,291,960.00 and that Defendant received that equity or debt from entities or persons that were introduced to Defendant directly or indirectly by Plaintiff – the undersigned finds that Plaintiff has not pled sufficient facts to demonstrate the practical likelihood that the contingencies have or will occur. *See Odyssey Marine Expl., Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 Fed. Appx. 890, 895-96 (11th Cir. 2013) (finding that plaintiff's declaratory judgment action failed to create an actual case or controversy where plaintiff's claim was contingent upon defendant discovering a specific shipwreck and then refusing to honor the alleged oral agreement with plaintiff guaranteeing plaintiff a share of the salvage).[11]

---

[10] The undersigned notes that in the Motion for default judgment, Defendant alleged, for the first time, that Mr. Greiner admitted that Defendant, as of March 19, 2014, was drawing and spending $1,000,000.00 per month against the Letter Agreement with EIF. Doc. 9 at 12-13. However, this does not establish that Defendant continued to draw and spend $1,000,000.00 per month in excess of the $17,291,960.00 threshold. Regardless, this allegation was not contained in Plaintiff's Complaint, and Plaintiff cannot cure a deficiency in its Complaint through its Motion for default judgment. *See Bautista v. Mangia Leggero, Inc.*, 2015 WL 6735541, at *2 n.3 (S.D. Fla. Nov. 4, 2015) (finding that the court could not consider new facts alleged in an affidavit attached to motion for default judgment when determining whether the complaint alleged sufficient facts to support liability) (citing *Sabili v. Chase Hotel Mgmt., LLC*, Case No. 6:10-cv-807-Orl-31KRS, 2011 WL 940230, at *3 (M.D. Fla. Feb. 28, 2011)); *see also Pinnacle Towers LLC v. airPowered, LLC*, No. 5:15-cv-81-Oc-34PRL, 2015 WL 7351397, at *2 (M.D. Fla. Nov. 20, 2015) (finding that the assertion of new facts in motion for default judgment and supporting affidavit was an impermissible attempt to amend the operative complaint).

[11] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. 11th Cir. R. 36–2.

### D. Count II

In Count II, Plaintiff attempted to allege a cause of action for breach of contract. Doc. 1 at 11. Under Florida law, a breach of contract "arises when there exists (1) a valid contract; (2) a material breach of that contract; and (3) resulting damages." *Energy Smart Indus., LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 Fed. Appx. 859, 862 (11th Cir. 2016) (citation and internal quotations omitted).

Here, Plaintiff based Count II on the Settlement Agreement, arguing that "[i]f Defendant received equity and/or debt in excess of the $17,291,960.00 threshold by entities/persons introduced by Plaintiff, then Defendant breached the [Settlement] Agreement." Doc. 1 at 11. But as previously explained, there are no well-pled facts to establish that Defendant received equity or debt in excess of $17,291,960.00. And even assuming that Defendant did raise equity or debt in excess of that threshold amount, there are no well-pled facts establishing that the excess equity or debt was raised from entities or persons introduced to Defendant by Plaintiff. Thus, there are no well-pled facts to establish that Defendant breached the Settlement Agreement.

## V. <u>CONCLUSION</u>.

Accordingly, for all of the foregoing reasons, it is **RECOMMENDED** that:

1. The Motion (Doc. 9) be **DENIED**; and
2. Plaintiff be given 14 days after the Court rules on this report and recommendation to file an amended complaint.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 11, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy