# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHCC COMPANY LLC,**

      Plaintiff,

v.                                                    Case No:  6:16-cv-1954-Orl-22DCI

**PILGRIM PIPELINE HOLDINGS, LLC,**

      Defendant.

## ORDER

This cause is before the Court on Plaintiff CHCC Company LLC's Motion For Default Judgment Against Defendant (Doc. 9) filed on January 4, 2017. The United States Magistrate Judge has submitted a report (Doc. 19) recommending that the Motion be denied without prejudice.

Defendant CHCC Company LLC filed objections. Doc. 20,

For the reasons stated below, Plaintiff's Motion For Default Judgment Against Defendant (Doc. 9) will be **DENIED without prejudice**.

## BACKGROUND FACTS and PROCEDURAL HISTORY

On November 7, 2016, Plaintiff filed a two-count Complaint against Defendant Pilgrim Pipeline Holdings, LLC, for claims[1] arising out of an agreement to pay Plaintiff a 1% finder's fee. Doc. 1. Plaintiff alleges Defendant is involved in a project to plan, develop, construct, and operate a new petroleum pipeline to transport refined petroleum products to various terminals located on the east coast of the United States (the Project). Doc. 1 at 3. In March 2012, Plaintiff agreed to provide financial networking and consultancy services for the Project.[2] *Id.* Through Plaintiff's

---

[1] In Count I, Plaintiff sought declaratory relief under both federal and Florida law over a purported controversy regarding whether Plaintiff is entitled to a finder's fee pursuant to the parties' agreement. Doc. 1 at 10-12. In Count II, Plaintiff sought damages for Defendant's purported breach of the parties' agreement. *Id.*

[2] Plaintiff reached the agreement with Nash Inc., which is not a party to the case and the Court omits any further discussion of allegations regarding Nash, Inc., for the reasons in Judge Irick's Report & Recommendation. *See* Doc. 19 at 3 n.2.

efforts, a financial resource provider named Natixis, Inc., agreed to obtain equity and debt financing for the Project. *Id*. at 5.

On March 22, 2012, Natixis executed a Mandate Letter with Defendant[3] confirming that Natixis was retained by Defendant as the sole arranger to raise equity and debt for the Project— estimated to cost approximately $770 million—which provided that Plaintiff had an interest in compensation for a finder's fee of 1% payable at the closing date(s) of the debt/equity facility. Docs. 1 at 6; 9-1 at 2; 9-2. Natixis successfully obtained an investor that agreed to accept the terms of the Mandate Letter, and Natixis then agreed to provide debt. Doc. 1 at 6. On May 13, 2013, the Project closed with EIF Pilgrim, LLC (EIF) as lender, and Defendant paid Plaintiff a finder's fee for the funding it had received as of that date. *Id*. Plaintiff alleged that EIF would continue to fund future draws for Defendant, and on May 22, 2013, EIF executed a Letter Agreement with Defendant confirming the funding terms. *Id*. at 7.

Thereafter, on May 23, 2013, Defendant formally retained Plaintiff under a Contractor Services Agreement, referencing the terms of the Mandate Letter and two months later, Plaintiff and Defendant signed a Master Services Agreement for services on the Project. *Id.* On December 31, 2013, Defendant executed and delivered the Settlement Agreement, which is at issue in this action. *Id.* at 8.

In the parties' Settlement Agreement, Defendant confirmed that Plaintiff had earned $76,175 in fees and anticipated additional payments of approximately $7.7 million. *Id.; see also* Doc. 9-4 at 1. Defendant also affirmed commissions it owed to Plaintiff, expressly referencing the portion of the Mandate Letter concerning Plaintiff's finder's fee. Docs. 1 at 8; 9-1 at 2; 9-4 at 1. Plaintiff alleged that per the Settlement Agreement, Defendant is liable to Plaintiff for a finder's fee of 1% on the gross amount of equity and/or debt committed to Defendant by any entities or

---

[3] Plaintiff was not a party to the Mandate Letter. See Docs. 9-1; 9-2.

persons that were introduced directly or indirectly by Plaintiff if Defendant has since received equity and/or debt in excess of $17,291,960. Doc. 1 at 10. On April 24, 2015, Defendant paid Plaintiff $172,919.60 as compensation for the finder's fee of 1% on the gross amount of equity and/or debt provided to Defendant. *Id*.

Plaintiff generally alleges in the Complaint that, "[u]pon information, Defendant has received equity and/or debt in excess of $17,291,960.00, entitling Plaintiff to the finder's fee" and "[d]espite Plaintiff's repeated demands, Defendant will not disclose if it received additional equity and/or debt in excess of the above threshold by entities/persons introduced by Plaintiff." *Id*. at 11.

On November 28, 2016, Plaintiff filed an affidavit of service indicating that Plaintiff served Defendant on November 14, 2016 via Defendant's registered agent in New Jersey, Anthony Pannella, Jr., Esq.[4] Doc. 6. Defendant has not appeared in this case. On December 6, 2016, Plaintiff filed a motion for entry of clerk's default against Defendant. Doc. 7. The following day, the Deputy Clerk entered default against Defendant. Doc. 8. Plaintiff filed a Motion for Default Judgment on January 4, 2017. Doc. 9. On January 19, 2017, Judge Irick entered an Order questioning subject matter jurisdiction in the case and requiring Plaintiff to file a notice naming every one of Defendant's members, and stating each member's state of citizenship; Plaintiff filed its response on February 4, 2017. Docs. 10, 13.

On August 11, 2017, Magistrate Judge Irick filed his Report and Recommendation that Plaintiff's Motion for Default Judgment be denied without prejudice. Doc. 19. He found that Plaintiff had (1) failed to cure issues with the jurisdictional allegations in the Complaint; (2) failed to include sufficiently well-pled facts to demonstrate the practical likelihood that certain contingencies in the parties' agreement had or would occur, and (3) failed to establish that

---

[4]Anthony Pannella, Esq., located in Woodbridge, New Jersey, is listed as the Defendant's registered agent according to the website for the New Jersey Department of Treasury, Division of Revenue & Enterprise Services. www.njportal.com/dor/businessrecords (search for entity; visited September 1, 2017).

Defendant had actually breached the Settlement Agreement. Doc. 19. On August 25, 2017, Plaintiff filed its Objections to the Report and Recommendation arguing exclusively that it had pled sufficient facts in the Complaint to support a declaratory judgment and breach of contract, as to the debt and/or equity raised by Plaintiff from the funding source, EIF. Doc. 20.

## STANDARD OF REVIEW

*A. Review of Magistrate Judge's Report and Recommendation*

District courts review *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011) (per curiam).[5] The district judge may reject, modify, or accept in whole or in part the magistrate judge's recommended disposition, among other options. Fed. R. Civ. P. 72(b)(3). *De novo* review of a magistrate judge's findings of fact must be "independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). The district court "need only satisfy itself that there is no clear error on the face of the record" in order to affirm a portion of the Magistrate Judge's recommendation to which there is no timely objection. Fed. R. Civ. P. 72 advisory committee's note (1983) (citations omitted); *see also*, *Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993).

*B. Default Judgment*

Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies

---

[5] Unpublished opinions of the Eleventh Circuit cases constitute persuasive, and not binding authority. *See* 11th Cir. R. 36-2.

to parties against whom affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)). Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Therefore, the court must evaluate whether it is proper to enter a default judgment. For example, if a defendant never appears or answers a complaint, then the "case never has been placed at issue[,]" and thus, the court may enter a default judgment. *Solaroll Shade & Shutter Corp.*, 803 F.2d at 1134. However, prior to entering a default judgment, the court must verify that the complaint is well pleaded because "[a] 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

To determine if a plaintiff's complaint is well-pleaded, the court considers Rule 8(a)(2) of the Federal Rules of Civil Procedure and the standard set forth in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (explicating *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007)). According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1947). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

*C. Service of Process*

The Court must confirm that the defaulting Defendant Pilgrim Pipeline Holdings, LLC, was properly served under the Federal Rules of Civil Procedure. It is axiomatic that absent good service, the Court has no *in personam* or personal jurisdiction over a defendant. *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F.Supp. 1152 (D. Del. 1975). Although federal trial courts normally face the issue of personal jurisdiction on a Rule 12(b) motion to dismiss, courts may raise the question *sua sponte* when deciding whether to enter a default judgment when the defendant has failed to appear, since a default judgment entered against a defendant who is not subject to personal jurisdiction is void. *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322 (5th Cir. 2001). A federal trial court has an affirmative duty to examine its jurisdiction over the parties when entry of judgment is sought against a party who has failed to plead or otherwise defend. *Williams v. Life Savings and Loan*, 802 F.2d 1200 (10th Cir. 1986). Without personal service of process in accordance with applicable law, a federal court is without jurisdiction to render a personal judgment against a defendant. *Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc*., 240 F.2d 814 (5th Cir. 1957).

Under Federal Rule of Civil Procedure 4(h)(1), service on an unincorporated association such as an LLC may be effected pursuant to the law of the state in which the organization is located or by delivering summons to an officer, managing or general agent or one authorized by statute to receive service. Fed. R. Civ. P. 4(e)(1)& 4(h)(1), (2). Pursuant to the applicable New Jersey Statute, a limited liability company "shall designate and continuously maintain" in New Jersey an "agent for service of process" who "shall be an individual who is a resident of" New Jersey or a "person with authority to transact business" in New Jersey. N.J. Stat. 42:2C-14. Service is effective on the date the limited liability company receives the process through its registered agent for

service of process[6] appointed by the limited liability company. N.J.S. 42:2C-17. *See Nydic Management Services, LLC v. DS Montvale, LLC*, 2008 WL 110392 (N.J. Sup. Ct. Nov. 8, 2007) (service of process upon LLCs does not require compliance with service rules for partnerships and unincorporated associations).

### D. Subject Matter Jurisdiction

Plaintiff alleged subject matter jurisdiction on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 1 at 1-2. Federal jurisdiction pursuant to 28 U.S.C. § 1332 exists only when there is complete diversity between the plaintiff and the defendant. *Owen Equip. and Recreation Co. v. Kroger*, 437 U.S. 365, 373 (1978). In order to achieve "complete diversity" no party plaintiff may be a citizen of the same state as any of the defendants. *Id.* at 373. Unlike corporations, an unincorporated entity such as a limited liability company is not, without more, a citizen of the state that created the entity; such legal entities are citizens of every state in which each of their members are citizens. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-88 (1990) (for diversity purposes, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens); *Rolling Greens MHP, PL v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) (for purposes of diversity jurisdiction, a limited liability company is a citizen of any state of which a member of the company is a citizen).

## ANALYSIS

As an initial matter, Plaintiff has not objected to Magistrate Judge Irick's Recommendation to require Plaintiff to file an Amended Complaint because it has failed to adequately plead or otherwise properly demonstrate complete diversity of the parties to support subject matter jurisdiction. Plaintiff alleged subject matter jurisdiction on the basis of diversity because the parties

---

[6] Despite having received communications and responses to demand letters from Defendant's attorney, Mr. Sheldon Cohen, Esq. of Teaneck, New Jersey, it does not appear that service of the lawsuit was attempted on, or notice given to, Defendant through Mr. Cohen. *See* Doc. 9-7, 9-9.

are completely diverse and the amount-in-controversy exceeds $75,000.00. Doc. 1 at 1-2. However, as Magistrate Judge Irick found, Plaintiff failed to adequately plead or otherwise demonstrate complete diversity of the parties. Doc. 19 at 6-7 (citing *Moreno v. Breiburn Fla., LLC*, No. 2:09-cv-566-FtM-29DNF, 2011 WL 2293124, at *1 (M.D. Fla. June 9, 2011) ("In an action filed directly in federal court, plaintiff bears the burden of adequately pleading, and ultimately proving, jurisdiction.")).

Magistrate Judge Irick noted that, although Plaintiff pled that Defendant was a limited liability company whose sole member was another limited liability company, EIF Pilgrim, LLC, Plaintiff failed to specifically identify each member of EIF Pilgrim, LLC, and their states of citizenship[7]. Plaintiff, in response to Judge Irick's Order to Show Cause, filed an unsworn Notice listing all of the members and their states of citizenship. Doc. 13. Magistrate Judge Irick determined that Plaintiff's unsworn Notice was insufficient to establish the existence of subject matter jurisdiction. *See, e.g., Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269-70 (11th Cir. 2011) ("[W]e consistently have required some evidence to assure us jurisdiction exists before we will ignore defective jurisdictional allegations that the plaintiff does not amend."). Plaintiff has not objected to this portion of the Report & Recommendation, which is well-supported. Plaintiff's Motion for Default Judgment could be denied on this basis alone.

Plaintiff's only objection is to the Recommendation to require Plaintiff to file an Amended Complaint because Plaintiff had failed to establish that Defendant had (1) actually received equity or debt in excess of $17,291,960; and (2) what person or entity had provided Defendant with such equity/debt. Doc. 20. The allegations of the Complaint alleged in Count I that there is a "controversy *if and/or when* Plaintiff is entitled to the finder's fee in excess of $76,000, per the

---

[7] Plaintiff simply alleged in the Motion for Default Judgment that "Defendant is [] a limited liability company, whose members are not citizens of Florida." Doc. 9 at 15.

- 8 -

[Settlement] Agreement, requiring determination of Defendant's receipt of debt and/or equity exceeding $17,291,960 by entities/persons introduced by Plaintiff, per its terms." *Id*. (emphasis added). Plaintiff asked the Court to enter a judgment "declaring, establishing and determining Defendant's obligation to pay the finder's fee to Plaintiff per the [Settlement] Agreement." Doc. 1 at 12. In Count II, Plaintiff argued that "*[i]f* Defendant received equity and/or debt in excess of the $17,291,960.00 threshold by entities/persons introduced by Plaintiff, *then* Defendant breached the [Settlement] Agreement and is liable to Plaintiff for the finder's fee, plus costs and fees." *Id.* at 11 (emphasis added). Plaintiff asks the Court to enter a judgment against Defendant for Plaintiff's finder's fee (*Id*. at 12), however, Plaintiff does not identify the basis for the finder's fee, who provided the funding vehicles, or the amount of the fee owed.

Plaintiff readily admits that "the Project has not yet completed its final funding/closing of up to $770,000,000 per the Amended Mandate letter." Doc. 20 at 3. Yet, Plaintiff now argues in objections to the Report and Recommendation that it has sufficiently alleged "well-pled facts [which] establish Defendant received equity or debt in excess of $17,291,960" from EIF due to Plaintiff's efforts. Plaintiff points to allegations in the Complaint alleging that, in May 2013, the Project successfully closed with EIF as lender and Natixis. However, Plaintiff admits it was already paid by Defendant on April 24, 2015 from EIF's fund, "for funding [up] to that time." Doc. 1 ¶ 34.

Plaintiff further alleges that EIF would fund future draws for Defendant memorialized in a Letter Agreement with Defendant. *Id*. ¶ 35. This allegation falls short of alleging that any amounts are actually owed for the future draws that actually occurred. As Judge Irick points out, Plaintiff alleged for the first time in the Motion for Default Judgment—*not* in the Complaint—that Plaintiff cannot cure a deficiency in its Complaint through its Motion for Default Judgment. *See Sabili v. Chase Hotel Mgmt., LLC*, Case No. 6:10-cv-807-Orl-31KRS, 2011 WL 940230, at *3 (M.D. Fla.

Feb. 28, 2011) (finding that because certain assertions of fact were in affidavit attached to motion for default judgment and were not alleged in the complaint, defendant was not deemed to have admitted them by virtue of its default).

The only other allegation in the Complaint on which Plaintiff relies is that Defendant's managing member[8] allegedly "executed a senior secured promissory note and security agreement" with EIF. *Id.* ¶ 37; Doc. 9-3. Plaintiff argues this allegation is sufficient to support a declaratory judgment and judgment assessing liability for breach of contract, at least as to the debt and/or equity raised by Plaintiff related to EIF. Plaintiff argues that a copy of a "promissory note" from Defendant to EIF "reflects a principal sum of $15,433.107.45, /$2,723,489.55 [sic]" plus interest at 25%.Doc. 9-3 at 38 (mistake in original).

However, Plaintiff mischaracterizes the "promissory note" which is an unsigned, unexecuted document. Within the 99-page document attached to the Motion for Default Judgment (Doc. 9) there is a "Development Loan and Equity *Option* Letter Agreement" between Defendant and EIF Pilgrim, LLC, which states on its face that it will have "the rights" to subsequently "acquire equity interests" and "*may* provide certain credit support"; attached to the document is the *unsigned* "Form of Senior Secured Promissory Note," among many other blank forms. Doc. 9-3 at 38-40. It is not clear what if any equity or debt financing was ever implemented from the agreement. This unsigned, unexecuted possibility of potential financing cannot be the basis for the Default Judgment on the finder's fee.

As Judge Irick explained, "[n]either federal nor Florida law permit the Court to enter a declaratory judgment based upon speculation and the mere *possibility* of legal injury." Doc. 19 at 9 (citing *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999);

---

[8] Petroleum Solutions Management LLC, executed the agreement on behalf of Defendant Pilgrim Pipeline Holdings LLC as its managing member. Doc. 9-3.

*Santa Rosa Cty. v. Administration Comm.*, 661 So. 2d 1190, 1193 (Fla. 1995)). Judge Irick determined:

> Plaintiff has not sufficiently pled facts establishing a justiciable controversy or the need for a declaratory judgment. Plaintiff based Count I on the Settlement Agreement, and argued that Defendant owes it a 1% finder's fee on the gross amount of equity or debt that Defendant has received in excess of $17,291,960.00. But there are no well-pled facts to establish that Defendant has received equity or debt in excess of $17,291,960.00. Nor are there any well-pled facts to establish what entity or person, if any, provided Defendant with equity or debt in excess of $17,291,960.00.
>
> * * *
>
> There are no well-pled facts to establish that Defendant received equity or debt in excess of $17,291,960.00. And even assuming that Defendant did raise equity or debt in excess of that threshold amount, there are no well-pled facts establishing that the excess equity or debt was raised from entities or persons introduced to Defendant by Plaintiff. Thus, there are no well-pled facts to establish that Defendant breached the Settlement Agreement.

Doc 19 at 9, 12. This Court agrees that there are no well-pled facts to establish that Defendant has breached the Settlement Agreement. It is significant that Plaintiff alleges in the Complaint: "There is a controversy *if and/or when* Plaintiff is entitled to the finder's fee valued in excess of $76,000.00, per the 12/31/13 Agreement," and requiring a determination whether Defendant has received debt and/or equity. Doc. 1 ¶ 65. For the reasons explained by Magistrate Judge Irick, the Court cannot enter default judgment in a case when it is not even clear whether a case or controversy between the parties actually exists: "Plaintiff merely alleged in the Complaint, in a general fashion, that '[u]pon information, Defendant has received equity and/or debt in excess of $17,291,960.00, entitling Plaintiff to the finder's fee.' This type of general pleading is not a 'well-pled fact' that is deemed admitted on default, as Plaintiff has not proffered the information or facts upon which it relied in making this conclusory allegation." Doc. 19 at 9-10 (citing relevant cases).

Based on the Complaint as currently constructed, the Court cannot enter a declaratory judgment based upon speculation and the mere *possibility* of legal injury. *Malowney*, 193 F.3d at

1347 (holding the "actual controversy" requirement of the Declaratory Judgment Act requires that the continuing controversy not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than a speculative threat of future injury; *Santa Rosa Cty*, 661 So. 2d at 1193 (holding that parties who seek declaratory relief must show that there is a bona fide, actual, present practical need for the declaration which should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts). Accordingly, after an independent *de novo* review of the record in this matter, including the objections filed by the Plaintiff, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendations.

## CONCLUSION

Plaintiff will be granted leave to amend the Complaint and replead the appropriate jurisdictional and factual allegations in an amended complaint[9] to be filed within 14 days.

Based on the foregoing it is **ORDERED** as follows:

1. Plaintiff is **ORDERED** to file an Amended Complaint within 14 days of this Order.
2. Plaintiff is **ORDERED** to serve a copy of the Amended Complaint on Defendant and provide a copy to Defendant's attorney, Mr. Sheldon Cohen, Esq. of Teaneck, New Jersey[10].

---

[9] Because Plaintiff must file an amended complaint to resolve the issues with subject matter jurisdiction allegations and an actual controversy, the Court need not address Plaintiff's argument regarding conditions precedent.

[10] Plaintiff provided demand letters sent to, and responses received from, Mr. Cohen attached to the Motion. *See* Doc. 9-8.

**DONE** and **ORDERED** in Orlando, Florida on September 21, 2017.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties